Your argument next in Case 18-1233, Romag Fasteners v. Fossil, Inc. Ms. Blatt. Thank you, Mr. Chief Justice, and may it please the Court. The Lanham Act authorizes courts to remedy trademark violations by awarding infringers' profits subject to the principles of equity. The question presented here is whether the phrase, principles of equity, requires trademark owners to prove willfulness as an absolute precondition to profit awards. The answer is no for three reasons. First, the phrase, principles of equity, signifies a multi-factor analysis where no one factor is controlling. Second, the phrase, excuse me, the statutory text and structure supersede any settled willfulness requirement. And third, there was no such settled background willfulness requirement. First, the phrase, principles of equity, refers to the familiar equitable principles that courts have long applied in determining whether to award profits in trademark cases. A defendant's culpability is a weighty factor, but it should not be controlling. Other traditional equitable factors are also important to further the Lanham Act's purposes to protect consumers and trademark owners' goodwill. Such traditional factors include whether other relief adequately compensates the plaintiff and whether the defendant is enriched by his violation of law. And these factors can all exist along a spectrum. For instance, culpability can range from fraudulent to innocence and everything in between, including callous disregard and negligence. So in a case where a defendant is completely innocent, court should require a greater showing of other factors before awarding profits. Conversely, a greater culpability justifies a profit award that deters future infringement. And courts can be trusted to use their discretion to balance the equities for the cases in between. The statute also requires the amount of any award to be compensatory and not a penalty and just according to the circumstances. Second, even assuming a settled willfulness requirement before the Lanham Act, the statutory text and structure reflect a congressional intent to supersede it. From the Act's inception, i.e., from 1946, Congress has expressly distinguished and protected defendants and witch defendants from awards of monetary relief based on a heightened mental state. Today, the Lanham Act contains eight provisions tying monetary relief to a heightened mental state. That's a lot of provisions. The provision that dictates monetary relief, Section 117A, is the provision that controls this case. That provision requires a willful violation for trademark dilution under 1125C, but no such mental state requirement appears for infringement violations under Section 1125A or any other cause of action under the Lanham Act. We think the inference is particularly strong that the omission of a willfulness requirement is intentional. The same Congress in 1999 that amended the statute to add a willfulness requirement for trademark dilution cases under subsection C affirmatively distinguished this type of infringement case under subsection A, because the amendment simultaneously struck out the word violation of sections 1125A and then reinserted that same phrase, violation of subsection A, and then added a willful infringement. Sotomayor, Ms. Platt, could you concentrate on the word equity? Do you think equity would sustain an award for innocent or good faith infringement without a more culpable state of mind? Because there's a wide swath of behavior between truly innocent, truly good faith, and willful. There could be reckless. There could be callous disregard. Would equity constitute an award for negligence or good faith? Yes. And as I said in the earlier case, you would need a greater showing of the other purposes or the other equitable factors, and those are two. The first and foremost is whether, if no other relief could adequately compensate the plaintiff. And even in a case of a completely innocent defendant, damages are notoriously hard to prove. They're almost never recovered in trademark cases, and they're particularly impossible to prove in component cases. There's the other equitable factor. So that's one, is that even a dollar, they would rule that out in an innocent case even though there's no other relief. But the second equitable factor is the basic principle of equity, which is just you don't get to hold on to profits that don't correctly belong to you if you violated the law to get them. And again, here, let's just take the example. The other side says, at a minimum, we concede $900. That's their argument on all we're entitled to for profits is $900. Their view is we can't even get $900 unless you show willfulness. And otherwise, just walk away with nothing. Now, they say that there's the statutory damages. You can always opt for the $200,000 statutory damages, which is certainly nice, but the problem with that is multifold. One is that it's not even available unless the mark is both registered and counterfeit, so countless trademark plaintiffs aren't even eligible for this. And second, it's supposed to be a floor and an alternative. So in a hypothetical case, that is our position. Now, in this case, we have a little more. The parties on remand have lots of arguments why the amount should be closer to $900. We have arguments why it should be higher because this is not only just a small business, but the manufacturer set up its operations in China where counterfeiting is rampant. And there's no incentive. If all you have to pay is nothing, there's just really not that much of incentive to prevent counterfeiting. So those would be the arguments on remand. And let me just say, at the common law, we did cite examples. They're not voluminous, but there are examples, both pre-Lanham Act and post-Lanham Act, where courts in cases of innocent infringement did award profits. It's just not routine. Pre-Lanham Act, that's not much, right? Three? Well, sure. Sure. Three is a lot when – Pre-Lanham Act, I said. Yes. Yeah. So the one of them was the Mikishawaka, and that was a Supreme Court case. You didn't award profits, but the district court did. The second was the Oaks case, which is, I don't know, 1888. It was from Alabama. Nothing wrong with Alabama. It counts as a case. And then we had a third case that – the third case is Prestolite, and that's from New Jersey. So I don't know why these cases don't count, just because there are other cases that say, we're going to award profits. So if you just look at the common law, and the most significant aspect of the common law, of course, is that the very cases from the common law that articulate a willfulness requirement say in the very same sentence, but there was some conflict in the decision. So a conflict is a conflict is a conflict. It's not a kind of clear rule that you could say would always rule it out. Sotomayor, how is willfulness defined? I mean, here the jury found callous disregard, but not willfulness. Did the judge charge on what those terms meant? Yes. Yes. So the charge on willfulness was it includes intentional conduct and willful blindness, which is awareness of a high probability of harm, and you take affirmative steps to avoid learning about it. Callous disregard is a rubric of willfulness, but it doesn't rise to either of those levels. It's closer on the recklessness spectrum. So generally in your case law, willfulness is defined usually to include reckless, but here the parties, meaning our side, did not object to recklessness being taken out, so the jury was only instructed on willfulness and not recklessness. But they're similar because callous disregard under Second Circuit case law was a function of willfulness. It just wasn't willful blindness. Breyer. I can't work out. There's maybe an obvious answer to this that I've missed. But in reading the statute, I thought, well, suppose you do have to have willfulness in order to get profits. Well, then there will be a certain number of cases you don't get profits, right? Okay. Think of those cases. Then I see this sentence in 1117. It says, If the court shall find that the amount of recovery based on profits is either inadequate or excessive, the court may in its discretion enter judgment for such sum as the court shall find to be just according to the circumstances of the case. So if you did have to have willfulness, but all these things like in China and so forth and were right there in the case, the court could give the plaintiff more money, couldn't they, under that sentence? Maybe I don't understand the question. The other side is no. We don't get any money absent willfulness. That's in this case they think that. But I want to know why. Even if we were arguing about willfulness. So I'm saying suppose they're right, that willfulness does apply. You think it doesn't apply, right? Right. Okay. But suppose they win. But suppose you produce your instance, which you just did, that in China they'll go around and dah, dah, dah. And we won't be able to get any significant amount of money. Why wouldn't you say to the judge, read that sentence, judge. They weren't willful. We agree. But we're giving you reasons why in this case we should get more relief. Well, if you're saying you should read willfulness into the recovery. No, I'm not saying that. I'm saying suppose you do. Yeah. So if your view is that you read it into it, but then courts can read it out. They did not say they can read it out. They can say it's there. They weren't willful. But we have a sentence here which gives us total discretion in the interest of justice to give the damages that we think are just and fair. So nobody's going to be hurt by accepting their side. All it's going to do is give more discretion to the district court to award as much money or as little as he thinks is fair. Why isn't that what that sentence does? I just want to know what it does. I think the sentence helps us. Here's just my concern. Six circuits read that sentence as saying they cannot award profits if willfulness is not shown. No matter how appealing the case. Yes. That's why we're here on a petition. Has anybody argued this, about this sentence? Yes. In your briefing, your briefing. Yes.  We're going to read it. I mean, it's in the intro and it's in the description. I don't know the page. I mean, it's definitely the gestalt of the case is going our way is, look, we'd like to see willfulness, but if we don't see it, it's not controlling and it's just one of these weighty factors. But there's always been a list of traditional factors before the Lanham Act and after the Lanham Act. The culpability is one. And the two that I mentioned are the other ones that are critical, whether there's some form of compensation and whether there's just a sense of unjust enrichment. But, yes, you can either go down or above. But I think that we use that sentence to say there's no harm, there's no risk of a windfall, because no matter where you come up with your award, the court can always reduce it or raise it, depending on the circumstances. So I don't – maybe I just don't understand your question. Well, I'm trying to understand the significance of the case. And you're saying unless we read willfulness out of it, there are going to be some consequences. Well, the infringer did it totally by accident. Totally by accident. He had a dream where this symbol appeared to him, and he put it on his thing not knowing that somebody else had it. A total accident. Now, you say, still, this is very bad, because don't you know that the trademark is owned by some widows and orphans and terribly suffering people, and you should certainly give them some money or goodness knows what will happen? You know, a very appealing case that you're worried about. Therefore, you say, read willfulness out of it. I say, why do you need to do that? Why not just point to the symbol? So we're not reading it out. We're just saying that it's not a precondition at step one. It is no question. I mean, our view is that it's a sliding scale. All of these traditional equitable factors are appropriate, and then when you get to the amount, you can adjust it. So it just would seem odd to write an opinion that says, even though it's not in the statute, even though it wasn't a clearly set of rule, just because the other side asked for it, we want to read it in because we want to be nice to the Respondent? I don't think that's a good way to write an opinion. Mr. Blatt, your lead argument, of course, is the phrase willful violation under Section 1125C, and the willfulness is not, doesn't appear in the other part. But 1125C includes willfulness. It's about willfulness. So I gather this is the argument on the other side. Saying willful violation, it's kind of like just the label. This is what it is. And so when you just stick the label in, it's about a willful violation. That shouldn't have the same sort of expression, whatever it is, impact, as you suggest. Right. And that's a fair argument. The argument is it's just mirroring the cause of action, and so that just begs the question of why did they even need to put willfulness in the trademark dilution as a protection against profits and damages in the first place? That's our whole argument about it appearing eight times. The underlying 1125C, when it was passed, says you need a willful violation for a cause of action to collect monetary relief. And our point is simply it is not the most natural inference, or the most natural inference is if they didn't think that there was already an omnibus willfulness requirement for all profit awards because they took such care in 1125C in the statutory damages and in the treble damages and profits. They basically say you can't get monetary relief damages and profits absent these heightened scienter. And the other side says, well, but those apply to damages, too. And our point is, sure, but it seems odd that Congress went out of its way to protect from the beginning in 1125C against profits when, under their view, you didn't need it because it was already read into the statute as a principle of equity in all cases. So, in other words, take section, the original trademark act of, the original 1946 act has 1114, which is the violation for registered trademarks. So it's very similar, like 1125C. It says, here's going to be a class of cases where we don't want monetary relief. So innocent printers and innocent publishers, no damages, no profits. And any defendant who reprints, or excuse me, who prints an infringed mark without knowing that the infringement was intended to confuse can't get profits or damages. And the other side says, well, it's not superfluous because it at least applies to damages. And our point is, well, it's at least superfluous as to profits. That Congress is taking its care in eight provisions to keep saying no profits here, no profits there, no profits left and right based on these heightened scienter. So whatever you think principles of equity means, the one thing it can't mean is there's a heightened scienter because the statutory structure is so overwhelming that Congress had this carefully calibrated scheme where they're spelling out when willfulness is required. Alito Of the cases where the courts have said that willfulness is a necessary condition, which one would you cite as being, as leading to the most unjust result? A case where a court said we're not going to award profits because there wasn't any willfulness. And that's very unjust based on the facts of the case. Is there one you would cite as an example? O'Connor No, because they don't say, like the leading case, that Regis case by the highest court in Massachusetts, it just says we're not going to, although the law is conflicted, we're not going to allow profits. And they're mostly relating to a fraud-based tort. So the underlying tort of the common law is one of fraud. And so I'm not sure they see it as particularly unjust if you're suing for fraud that you don't get relief if there's no fraud. But in the technical trademark cases, where most of our cases come from, they're including the three cases, well, the Hamilton-Brown case, they're saying this property, your property was infringed so there's a pot of money that sort of rightfully belongs to you. And by the time you get around to your three cases, the Champion-Sparkplug case and the Mishawaka case, the court is balancing the circumstances. It's saying the willfulness is relevant. But it also said, look, we don't think the plaintiff was really hurt. We don't think the defendant really benefited. You know, you get an injunction and go home. And so I just haven't seen cases where there was a mean court saying it looks like you deserve it, but I'm constrained by this willfulness requirement. I don't know if that answers your question. Kagan. Do you think it's open to us, Ms. Blatt, to pick a position someplace between you and Mr. Katyal? In other words, Mr. Katyal says never under any circumstances can you get profits without willfulness, and you say, well, willfulness is just one factor among the things that you think about. But I would think that there's some kind of intermediate position, which is based on the history and a general sense of it, which is that willfulness might not be an absolute necessity, but it certainly should be entitled to very significant weight. You know, you could say like a presumption of a kind. No, I would not say a presumption unless you're going to give us the same presumption, a presumption of compensation when other remedies aren't adequate and a presumption against unjust enrichment. And here's why we sort of use the Kurtzang case as an example in terms of fashioning our rule, is that I do think it's a sliding scale. The more innocent the defendant, you better have a greater justification for And then you might have some cases in between. But you could have a negligent or a reckless defendant, and I don't know where the presumption would fit, and the court should just balance it. So does the plaintiff get at least $1 in that case? And so a presumption just puts the scales too heavy. I think all the courts recognize, and I just said, it's a weighty and important factor. Breyer. Breyer. How do you do this? Sure. I think that the – I guess your view is there's no willfulness requirement, but what it says is the plaintiff shall be entitled to recover defendant's profits, damages, and the cost of the action. Okay? It says that. Subject to principles of equity. Okay? Now, we have a problem. One thing to say is equity has always held that willfulness is necessary. Good. We're finished with this case. But that's not your position. That's also not true. All right. I understand. I understand. Okay. Can we say anything about what principles of equity require? Sure. All right. Now, I notice the Sixth Circuit uses the word wrongful. Do you want us to use that word? No. How do you want us to write that sentence, what principles of equity require? So, and I think it helps to say that all of the courts have agreed on what the principles of equity mean. They're the factors that start from the English cases up and through your cases. The ones I said, the defendant's culpability, the need that other relief doesn't adequately compensate the plaintiff, and the theory are there profits that are just you're holding onto profits that don't rightfully belong. Those are the three. Now, the Fifth Circuit and the Second Circuit has articulated this maybe in a six-factor test, but they're all getting at those three things. So, the factors are clearly defined already in the case law. The courts are all happy. The only thing they're disagreeing about is whether willfulness is a gateway on-off switch. So, I would be very happy with an opinion, and this, if you want to advance the case law further away from where it is on our side, it's perfectly, I think it's appropriate to say because the defendant's culpability is a weighty factor, you should have other reasons. But part of the purposes where I would turn to in terms of, you know, there is no other relief in almost all of these cases, and the whole point of this is not only to, it's not just giving the mark owner some money, it is protecting consumers. The only other choice would be an injunction, and an injunction in some cases is either hard to get or it just doesn't work. Otherwise, there's no incentive for negligence. You might as well just take your, you might as well just see what happens if you put some counterfeit stuff on. If it's negligent, you're probably not going to have to pay. It wasn't willful. It was just negligent. Who cares? And so it seems like you should at least have something to deter infringement when, just look at the statute. Congress obviously cares about trademark infringement. Breyer. Is it all right to say this, that there could be cases where some profits, but not all profits, is the equitable thing to do? Yes. Yes. So we could say that. Yes. Yes. And the parties on remand are actually going to debate about how much profits, and the ranges can be as low as $900, and they go all the way up from there. Well, that's a little strange. I mean, equity either includes profits or it doesn't. I don't know why you would just sort of split the baby so each side is a little happy. It's a principle of equity, and you either get them or you don't. I mean, equity is not, doesn't mean what seems fair. It's a little more complicated. Sorry, I was, yep, and this is a different, separate issue that I was referring to, not just profits, but there's a debate in this case whether you get profits that are attributable to the infringement. So because this is a purse and a snap, there's the ---- Oh, sure. Well, that's a different legal basis. That's all I was talking about, yes. In response to Justice Breyer, you didn't say, okay, profits are $100,000. You take 50, I'll take 50. No. So the profits that are attributable to the infringement, at least the other side would say, you know, you don't even get your $900. Now, the only reason courts have lowered them would be latches. You know, there are unclean hands. So there are principles. Or if for some reason you thought, I don't know, it can't be a penalty, so for some reason you thought it was a penalty or excessive, I could probably think of some hypotheticals where you might want to lower it, like say you thought the plaintiff was no longer going to be in business or who cared about the goodwill. But, yeah, you're entitled to your profits, but the court does allow an adjustment. But the profits on the purse are $4 million. The infringer did put in a copy of the trademark in a tiny little inside purse that nobody ever saw. So now he's entitled to profits, $4 million, when it's unlikely that anybody, or maybe only three people, were lured into buying his purse because. So that's what I was thinking of. Maybe what he's entitled to is the purse, is the profits on three purses. Or maybe. So there's a separate legal issue, which the parties have it briefed, and there's no dispute in the case law, but it's just an amount, whether you're either limited to the attribution or if not, what kind of mental state would go over that. I can make a very good argument. Yeah, but there's still, I mean, it's unlikely that there will be $4 million in profits attributable to this little thing that nobody can see. And that's a question. But I don't think that, well, maybe it's right. Maybe equity allows you if there, you know, that just seems like too much, you say, well, I'm going to just give you less. I would say that the equity, the traditional factors are the equity ones I talked about. The statute does allow the provision that Justice Breyer was focusing on, an adjustment for because you either think it's inadequate or excessive and it can't be a penalty or compensatory. I don't think that relates to equity. I think that's just a legal thing that the statute gives the Court's discretion. If I can make one other thing, the statute actually says you can go up to three times damages. So. Thank you. Thank you, counsel. Ms. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. My friend tries to make this case seem easy, but to do that, she has to sweep both Congress's words and two centuries of history under the rug. We're here today because Congress expressly made the Lanham Act's monetary rewards principles subject to the, monetary rewards subject to the, quote, principles of equity. And over many decades, courts developed a principle that governs cases like this one. They required willfulness for the equitable remedy of profits awards, unlike for injunctions. For all the dust my friend tries to kick up about the cases in her brief, here's the bottom line on all the cited cases. Not one of them, none, actually awarded profits without willfulness in two centuries either here or in the U.K. And in response to Justice Alito, she hasn't been able to give you a single example of an unjust result as a result of this long tradition. Now, trademark infringement isn't some newfangled violation like cyber squatting. It's one of the oldest violations in the book. And that book, both before 1946 and after, required willfulness before a defendant could be forced to go through the burdensome process of accounting for its profits and risking a windfall. Five different treatises set out this rule. Many cases speak of this categorical rule. The remainder demonstrate a longstanding practice that is, which is, to use Judge Friendly and the court's phrase in Halo, has narrowed the channel of discretion for awarding profits. Congress legislated against the backdrop of that practice, which is why even the And that requirement is now expressed in the Lanham Act's reference to the principles of equity. With respect to my friend's textual arguments, she's asking you to believe that Congress, by implication in the 90s, intended to invite the courts to do something they had never done in practice. If Congress wanted to take that step, that would be huge news. They would have said so. Her best argument is the 1999 amendment changes things, which is what she walked away from in her brief but is now resurrecting here. And that has four problems. First, Congress in 1999 didn't repeal the textual hook for the willfulness requirement, which was the phrase principles of equity. That's the way court after court had interpreted it, including the Tenth Circuit just the year before and the Bishop case. Congress left that phrase untouched. Second, Congress never indicated anywhere in this, in the 1999 act, that they were trying to modify the willfulness requirement in any way, which is what Judge Dyke said below, what the law professor's Lemley brief says here. Third, the 1999 amendment did something unique. It was newfangled. It introduced a new cause of action, trademark dilution, one which had no historical analog. It didn't have a customer confusion element. Sotomayor, my basic problem is that as I'm looking at these cases, the term willfulness over the centuries has been differently defined by different people. Some people have included recklessness. Others haven't. McCarthy, if you read his definition of willfulness, it does include recklessness and callous disregard and a whole bunch of blameworthy features. There was a circuit split on this very issue when Congress acted in 1999. You don't think they count for much. You try to distinguish them. But there are cases, not many, I grant you, where something less than willfulness was the basis for a recovery. Given the uncertainty of what willfulness means, the fact that there were exceptions to the common law rule, whether you recognized them as significant or not, how do we write an opinion that says you need willfulness a la what you mean, willfulness being just conscious avoidance, not recklessness, not callous disregard, not this, not that? How do we do that in light of 117A, which doesn't have an equity limitation? It says, 117A says, you can award profits. If you think it's too much or too little, use your discretion. Absolutely, Justice Sotomayor. That's what Congress said. Once you pass the threshold of getting a profits award, which is, of course, in discretion at the back end. That's where those equitable principles come in. But Congress at the front end did here exactly what it did in the injunction context and what this Court said in eBay, which is, there's a hard and fast requirement for principles of equity to show their irreparable harm. You said it must be shown. Even though equity is generally flexible, you've got to go through the gate. Here, that gate is the same thing. In 1946, she has that in place. That's the more important part of my question, which is, what does willfulness mean? Right. And where is there a universal definition? Yes. We think there is a universal lowest common denominator of willfulness, at least meaning what exactly the district court charged here at Petition Appendix page 43A, which is the defendants must be actually aware of the infringing activity. So there are five separate treatises that set that out as a hard and fast requirement. NIMS and Ludlow and Jenkins and Heseltine, which, by the way, she misstates because she cites the wrong provision of Heseltine about injunctions. But page 305 with respect to profits says willfulness is required. Case after case says willfulness meaning knowledge is required. And my basic point is, she's got no case on the other side that disagrees with this, except the possible hypothetical of Oaks in 1883, which, again, didn't actually award profits in the absence of willfulness. And in the case of Oaks, it doesn't actually award profits. Ginsburg. Mr. Katyal, you say that principle of equity means willfulness, but in many cases, as Ms. Black pointed out, the statute uses the word willfulness. So you say plain text principles of equity. I would say if it said willfulness, that would be plain text. But principles of equity? So, Justice Ginsburg, as our brief explains, every time Congress, and they certainly didn't use willfulness in the 1946 Act, every time they added to it later on, there was a reason for it. So, for example, in 1999, the reason they added to it is because you couldn't look to principles of equity to determine what was trademark dilution, because that was a brand-new fangled defense which didn't have consumer confusion as its element. So, but here we're talking about the oldest violation in the book, trademark law. And I'd say, Justice Ginsburg, if you adopted that reading, which she's trying to do, which is, oh, if Congress says the word in some other places by negative implication, then it's out in other places, that would be a dangerous cannonball to the statute. So, for example, Section 1115B9, which you can look at Joint Appendix, page 135, that has that, that says that latches is available to fight incontestability, and Section 1069 from the 1946 Act says latches is available to contest inter partes determinations. If you adopted her reading, you'd be saying, well, latches isn't anywhere else in the statute. No, no. Why should we assume that Congress wanted to exclude reckless infringement? Because Congress in 1946 acted against the backdrop of longstanding consistent practice. There is not a single example she's able to give you in which there was an award given. But as Justice Sotomayor points out, willfulness is a vague word, ambiguous word, sometimes covered what we would consider recklessness. So why would you, therefore, exclude recklessness? Because here, Justice Kavanaugh, there's a more specific tradition. There's no doubt. Cases like Ratzlaff's say willfulness means different things in different contexts. But here, it has always meant at least actual knowledge, subjective knowledge, not recklessness. And what would be the policy objective achieved by excluding reckless infringement? So we do think they are there, but we think Congress used this phrase, and your job is to interpret the phrase. I agree. I understand that. But the policy objectives are, I think, incredibly strong. That is, the tradition of profits comes from equity and the idea that damages weren't at that point in time available in courts of equity. And so courts look to profits. Then there was a separate rationale of unjust enrichment, but that was all about moral blameworthiness, about wrongdoing. And someone who is innocent is not wrongdoing, which is why this Court in Saxel Henner and in McLean, which states a consistent rule. But if you're reckless, there's some wrongdoing. But it's always been more than that. The courts have always said you actually have to be subjectively knowing what you're doing, subjectively on knowledge of what you're doing. The Moet case, which this Court has referred to twice as stating the rule, both in 1877 in McLean and in 1900 in Saxel Henner, is a perfect example of this. Because in Moet, what happened is you had a champagne dealer who imported some bottles, not knowing that they were spurious. And what the Court said in England, and what this Court cited with approval twice before the Lanham Act, was that's someone who's innocent. They're not engaged with wrongdoing. You could even have situations in which they're reckless. For example, the Gorham case in 1912 was one in which you had a silverware dealer who was reckless, who blew off the fact that there was a stamp used on the silverware, which was really a mark of a famous silverware company. But what this Court said is no — excuse me, what the Southern District said is, no, you need more than that. You need actual knowledge. And that — Roberts. Mr. Kotchal, can we return to Justice Ginsburg's question for just a moment on the statutory text and whether principles of equity might be an unusual way of saying willfulness? As I understood your response to Justice Ginsburg, that we would — we would perhaps read out latches as a defense. And I just — my problem with that is that when we say principles of equity, we mean latches. Those are the — that is part of the trans-substantive history of equity. And if I go look at a treaty in equity, I'm going to find latches. What I'm not going to find is a substantive rule about trademark. For that, I have to go look at a trademark treatise. And so that's my problem textually. And I just want to give you a chance to respond to it. And I might ask you, really, isn't your argument nothing about principles of equity but about willfulness in the air? Yes, sir. And why didn't you make an argument that we should, as a background principle, assume some sort of consistency with the common law when Congress was legislating? You seem to have disclaimed that and said, no, no, there's a textual hook here and it's principles of equity. So that's a long windup. But those are my concerns. We certainly made exactly that argument, citing Morrisette in our brief, for the idea, even if there weren't the phrase principles of equity, Congress acts against the backdrop of the common law and is deemed to interpret it. So that's certainly there. I think it's common ground that principles of equity include knowledge and willfulness because she's even saying it's a factor. That's how she started her argument, and it's at page 8 of her reply brief. So I think everyone agrees that it is a principle of equity, the state of mind. It's just a question of how much weight you give it. Our point to you is Congress in 1946, when they used the phrase principles of equity, I don't think just meant trans-substantive principles. After all, it was the bedrock of a profits award. Profits is, after all, an equitable remedy in the first place. And so in order to decide whether that equitable remedy should be given, you would look to the tradition of equity. And that tradition has always been the longstanding practice for two centuries is that willfulness has been required. And that's why there's not a single example on the other side. Now, she says, well, this is hard. You're going to have to read all these cases. But I think that's the dog that didn't bark. Every single case that's given profits awards in two centuries has required willfulness. So the question is, is it worth the candle to make it a factor and run into the kind of standardless result that I think she's seeking? As Justice Sotomayor just pointed out, there wasn't, there isn't in the cases, a uniform agreement on what willful means. And Justice Kagan had suggested that maybe it isn't all one way or all the other. So you can say the innocent infringer, no profits when it's innocent. But then there are shades of blameworthiness. And we're not going to make willfulness the essential one. Maybe callous disregard, maybe reckless. Justice Ginsburg asked her to cite a case in which callous disregard was enough before 1946 to find, to find a profits award. She won't be able to cite one except for the theoretical possibility evokes. And my point to you is when you were interpreting the phrase principles of equity just as in HALO, just as in eBay, what this court did is look to the longstanding practice. The Chief Justice's separate opinion in eBay referred to a page of history being worth a volume of logic. And that's exactly what's happened here. That wasn't original with me. And that's exactly what's happened here, is that you've had two centuries in which this phrase in equity has been interpreted by court after court. And it is a fast rule. Indeed, this court in the McLean case, Justice Ginsburg, in 1877 said courts constantly refuse profits awards without that. And there isn't any tradition. There isn't any example on the other side. And there's treatise after treatise. And by the way, Justice Gorsuch, the restatement is a general treatise. It's a restatement on torts. It's not like, you know, so but I do think actually the trademark specific treatises would be what would be the relevant tradition here, if you're trying to understand. Reading all those, I'll try this again and maybe I should ask you. All right. Suppose you win. And so the callous disregard person can't give profits, profits doesn't apply. But this is really a rotten infringer. And he behaved very badly. Can the winning trademark owner point to the sentence I read initially and say, Judge, it's not fair that they're not counting profits here. So don't call it profits, but give me a lot more money. Absolutely. The statute, this always say page 54 of our brief, allows treble damages for that. Not just treble, but up to a limit, up to a limit. But you can't treble profits. You can't treble profits because that is a harder task. Correct. But the sentence I read has no such limitation. That's what's confusing me about it. I thought, is this all much ado about nothing? Again, I think that the word is subject in the first instance of the gate to principles of equity. But there's a much more important answer here, Justice Breyer. She can't come up in response to Justice Alito with a single time in which this happened, an unjust result in two centuries. And the reason for that is trademark law focuses on protection of consumers in which injunctions and damages has always been enough, which is why there isn't an example on the other side. To the extent she has some theoretical argument, it should be one made to Congress. Congress dealt with it, actually, here, this idea that there's no other way. I'm still trying to get the end. I don't know why I can't get it. I must be missing something. Where it turns out, for you having won, that there is a case, imaginary, where the person does behave badly but doesn't meet the threshold. Does this sentence, did you come across anything that suggests the sentence that I read does any work? Where you would say, Judge, I agree, we don't get profits. It wasn't willful what he did. But it was pretty bad. And so we want more money. Yes, Justice Breyer. It does work with respect to damages, not with respect to profits, because up above in 1117, profits is subject to the principles of equity. And that is a limitation. But damages is notoriously hard to prove, correct? Well, I actually disagree with that. She doesn't cite any study or anything. The only study I'm aware of is the Lex McKenna study in 2017, which surveyed 2009 to 2017 in every trademark award and found that profits accounted for a total of 13% of profits awards and also 13% of the dollars. And to the extent you think that's somehow, you know, worth the candle or something and you should bump that up, that's something that I think Congress should be dealing with. But, of course, here they did. They have a statutory damages provision to deal with low damages awards. You've mentioned a couple times whether it's worth the candle to not have a willfulness requirement. But is it worth the candle to exclude all reckless cases, as Justice Breyer has stated, when willfulness will usually be a key factor in the calculus regardless of who wins? Right. We don't doubt that if we were to lose this case on remand, you should make very clear that willfulness is a key factor, the big kahuna or something like that. But our point to you is that the reason why the common law rule makes sense is that willfulness cuts off, I think, the threat of very large profits awards. And this case is a perfect example. She sought $6 million, every dollar in profits, for the sale of these handbags. And that's what she was referring to with this attribution thing. And, indeed, they sought every dollar of Macy's profits, $7 million. And Macy's is an entity that, you know, nobody is arguing had any knowledge whatsoever, way, shape, or form, or even recklessness with respect to what was going on with these little snaps in the handbags. That's the danger. How much would you have asked for? I mean, it doesn't strike me as overreaching to ask for every dollar of the profits if you think you're entitled to profits. Well, that's the downside here. And, indeed, the statute puts the burden on the defendant to disprove any attribution. And so one of the reasons why you have the willfulness requirement is to knock out and block circumstances in which high awards are threatened and, indeed, settlements are forced, which happened in this very case. Now, she says, well, that's not going to deter enough, and you need to have something extra, which, again, is something for Congress. Again, this is a perfect illustration. Just the injunction alone cost us $4 million. We had to remove all of these bags right on the eve of Thanksgiving's big sales and the like. And so in a world in which you have injunctions and damages and all the attendant consequences of pulling inventory, would Congress really have intended to disrupt a 200-year long tradition in order to do this? May I ask two questions about that tradition? The first is, you've said several times that Ms. Blatt has zero cases, and I believe Ms. Blatt said that she had three cases. So if you would address that. The second is, although you point to a lot of cases in which the results come out your way, there are comparatively few where the Court sets out the rule as a categorical one. You know, in many of these cases, the courts do seem to be thinking of willfulness as a factor, a significant factor, but not a gateway requirement. So those results might come out your way, but they don't articulate the rule that you propose, do they? Yes. Five separate treatises and 37 of the 50 cited cases do set out the rule or say willfulness is the only factor. But I think that's not the test this Court applies. So, for example, in HALO, what this Court did was look to the long practice. And indeed, the first case, main case it cited was a case called Cincinnati-Simons, which was a case just about the facts of damage awards and treble damages awards. But from that longstanding practice, what the Court did was derive a principle, and that's what we're saying here. You've had a longstanding practice for 200 years. And, yes, Justice Kagan, those three cases do not stand up. Even if she had three cases, we don't think an outlier three cases in 200 years is going to get her where she needs to go. But taking them in turn, one, Mitsubishi rubber. This is the Sixth Circuit's determination at 119 Federal Second 323. The rule prevails in Michigan that an account of profits will not be taken where the wrongful use of a trademark has been merely accidental. And then saying this rule is in harmony with the rule prevailing in the Federal courts, and indeed in Mishawaka rubber, the Court limited the profits award to the period after May 19th, 1933, which was when they were on notice. So this would be a problem. Sotomayor, the problem is, as I read those cases, you do have a handful, a little bit more of a handful, that say you need willful. But a lot of those cases, including the quote you gave me, give the negative. Accidental good faith is not enough. That's not the same thing. We agree not. Every case states the rule, but she doesn't have a case on the other side with the exception of the theoretical possibility of Oaks. What don't you do with the three cases that she points to? Yeah. So the second case is Oaks, which has never once been cited again for that proposition. We're not saying it's because it's from Alabama or something like that. It's literally never been cited again for that proposition. And, again, there was no award in that case. Well, it's only the last 20, maybe 30 years that we had Lexis to cite cases like that. Well, I think, you know, I think. Lexis it was a little bit. But, Justice Sotomayor, I think, you know, this Court in the McLean case said courts constantly refuse profits awards because of a lack of willfulness, citing the English case of Moet, which is the best case. It's on all fours with this. That's the case that case after case, Liberty Oil, the NIMS treatise, all of them are based on that fundamental root. And her third case was Prestolite. And, again, Prestolite, and this is in our red brief at page 42 and page 444 of Prestolite, is make clear that the conduct in that case was willful, and that's why a profits award was given. Quote, what the defendants did was to fill tanks bearing the complainant's trademark and either sell or distribute them for sale. I've already found the defendant had knowledge of the practice of the dealers and the like. So every single one of the cases she points to, I think actually boomerangs. It doesn't say what she says it does. This is true of other language in Romag's brief, which makes this look a lot more complicated than it is. McLean and Heseltine and even Draper. She cites Draper, but that's only one judge. She doesn't point out the other two judges disagreed with this. So, look, at the end of the day, she's got one case from Alabama in 1883, which was never actually resulted in an award of profits. You have five treatises on the other side. You have 37 of the 50 cases which do state a rule, and 13 cases which are fully consistent with the rule. I think that's at least as good as what the Fred Music case was. In stating the rule in your brief, you consistently say good faith, not willful. Innocent, not willful. But there's a huge gray area, maybe not huge, but there's a gray area of behavior that's not good faith or innocent, but reckless, but nonetheless is not willful. And that, your description in the brief, consistent, also seems consistent, as Justice Sotomayor says, with the rule. And I should have made this clear with respect to Justice Ginsburg's question. Yes, the cases sometimes say ignorance or accidental or something like that. And so, but there's at least a threshold of actual knowledge. There is no case that she's able to cite outside of the Oaks language in 1883 that you could read to say that something lower than something in which there's objective recklessness is enough to sustain a award of profits. They always rely on subjective, actual knowledge. The question is, can you say that there's a greater level of willful blindness, conscious disregard of a substantial risk? Yeah. So, you know, I don't think that the cases have gotten too into that one way or the other, but the... Right. And that's the key, right? No. I don't think so. Here, I think, you know, here the question is that, you know, because here the district court here found, this is at page 47A, the evidence at trial in most could support a finding that Fossil was negligent, not that it acted in reckless disregard with willful blindness and the like. So... Mr. Cantor, could you explain the features of trademark that make it different from copyright and patent where, as I, if I understand correctly, you can get profits without showing willfulness? Yeah. So trademark law is fundamentally different from those. Those are about ownership. Here, this is about consumer confusion. And protection of consumers. And as our brief explains, once you go down that path, you have to worry, and this is one of the reasons for the willfulness requirement, that willfulness litigation will be used to browbeat entities like Fossil and to seek massive amounts of profits, every dollar they made, and also downstream, not just the, you know, not just the designer of the handbags, but every entity that sells them, the Macy's of the world, to the tune of $7 million. If Congress really wanted to do that and authorize such a revolutionary change in trademark law, one would think they'd say so and not leave it to negative implication. Because at the end of the day, what she's asking you to do is to say that Congress in 1999 put into the statute something that literally had never been done once in practice. She has not a single time it's done. That's why this Court, in interpreting the phrase principles of equity in the HALO case, said, look to the long tradition. Look to what actually happened. You don't need an ironclad rule. Just look to what happened. Here, what happened is one thing in the U.K. and in the U.S. for at least 180 years, which is no profits or words in the absence of willful conduct, at least subjective knowledge that what they were doing was wrong. That is the common denominator in NIMS, the restatement, and Ludlow and Jenkins, and the 37 cases cited in the brief. Other questions? Thank you, counsel. Ms. Blatt, five minutes. You may want to cut me off. So I don't know what to say. I didn't go to a fancy law school, but I am very confident in my representation of the case law. Mishawaka is a case by you guys, and you said in there, in the dissent, it was an innocent infringer. Profits were awarded. The district court case says, hey, I don't like the assertion that innocent people shouldn't get profits. But you guys can read the case and decide whether our assertion is credible. But that is a district court case, and it's a Supreme Court case by the dissent that acknowledges innocence. Oakes, it is what it is. You can read it, and Presto Light is the same. In terms of give me an example of an unjust case, I would start with this case. The argument is we get zero, even though there was callous disregard, even though their snaps were ripped off, even though it's a small business, even though, you know, that's all they make, and it was a counterfeit snap. If we get zero or even a quarter, that would be unjust. So that's my example. Second, on the treatises, I hope you read them. Four of them use the word damages. They don't distinguish profits. They say a principle of trademark law is you don't get damages. No damages absent willfulness. He doesn't have a response to that. All of their cases but one say fraudulent intent. So every case that articulates the rule uses the word fraudulent, not wrongful but fraudulent, and that's not his argument here. Third, no case that we found under the 1905 Act applied a mental state requirement. I didn't hear him say a case. Four, he did drop the law professor brief, which I'm so glad, because I'm going to quote from the leading site of the law professor's brief, Thurman. The law was, quote, not clear from 1870 through 1905. The issue was, quote, unclear when the Lanham Act was enacted. Specifically notes, this is my favorite, there was a majority and minority rule on the subject, and the Supreme Court was in the minority. So you guys had the minority rule because you didn't require willfulness in the Champion Spark Club case, and then apparently you muddied the waters in Mishawaka. So that's their treatise. Oh, wait a minute. Quote, the end result is ambiguity. So that's from their treatise. And four out of their five treatises use the word fraud. It's quite right that I'll read the treatises, and I've read the Lemley brief, and I will read the sources. But I don't understand your statement that they receive no damages. I thought the statute that I have in front of me says that they are entitled to recover profits and any damages sustained. Right. And so you don't need willfulness to recover any damages sustained, do you? Or have I misunderstood? No, I'm just saying the logic of the Respondent's argument is that the same common law rule that required willfulness for profits in the same breath said fraudulent intent was also required for damages. All of those cases say that? All of the treatises. Four out of the five. All right, the treatises. Yeah, the cases on this. Okay. One of the cases. Nobody is claiming. Are they? I want to know. Nope. That's our argument. They are claiming that you need willfulness for the client, no matter how poor, no matter how, you know, he gets his damages. Right? Right. Our argument is the other side just wants to take you up to where they win this case. The actual common law sources say fraudulent intent, and it also extends to damages. This is just another way of saying the law was a mess and it wasn't that clear. When three out of their eight cases say there was a conflict, I just think the whole notion of the Morissette, or we cite that Fogarty versus Fantasy case, is if you just have a lack of clarity on the issue, you don't have a basis to presume that Congress wanted you to read in an unstated requirement. And I think, at least in the Justice Scalia and Garner book, it says when you're talking about clarity, it's something that all the members of the bar had to agree was settled. And if the very case that was conflicted, if the treatises say it wasn't clear, and if the cases are all over the map, again, the fact that we have three cases where they award profits is kind of neither here nor there when we had eight cases that are just inconsistent with the willfulness requirement, including, I will end with, I'll sit down early, is Champion's Spark Plug case. It's a case in 1947. It was construing the 1905 Act, said it's relevant. And then it cited two other factors as part of the equities. That's, to me, you know, just it would be hard to find a settled rule from 40 years of silence under the Lanham Act's predecessor. Thank you. Ms. Blatt, Texas is a fine law school. Thank you. Thank you, Counsel. The case is submitted.